■ 41 FIFTH OWNERS CORP., Respondent, v 41 FIFTH EQUITIES CORP., Appellant. [787 NYS2d 326]—

Judgment, Supreme Court, New York County (Jane Solomon, J.), entered September 5, 2003, following a nonjury trial, which awarded plaintiff the principal sum of $197,723.42, and, insofar as appealed from, (1) dismissed defendant's second counterclaim seeking damages for lost rent; (2) denied defendant's third counterclaim, as restated, and declared defendant the owner of an air conditioning and ventilation unit (a/c unit) servicing the professional offices; and (3) awarded plaintiff attorneys' fees incurred in defending the counterclaims, unanimously modified, on the law, to declare plaintiff the owner of the a/c unit and remand the matter for a determination of attorneys' fees, and otherwise affirmed, without costs.

Plaintiff 41 Fifth Owners Corp. (Owners) is a cooperative housing corporation which purchased the apartment building

located at 41 Fifth Avenue in the City and County of New York on April 2, 1985. A contemporaneous lease for professional space in the building was assigned to defendant 41 Fifth Equities Corp. (Equities) in December 1989. With the consent of plaintiff, Equities subleased the space in July 1990 for use as medical offices.

Owners commenced this action in March 2001 to recover additional rent attributable to increased maintenance charges, which Owners inadvertently omitted when calculating periodic rent increases under the escalation clause of the lease. Equities counterclaimed, inter alia, to recover rents asserted to have been lost due to plaintiff's failure to continuously supply air conditioning to the professional space during the hours specified in the lease and also to enjoin Owners from turning off the a/c unit during those times.

The matter was tried by the court, which found that plaintiff's uncontroverted proof established that Equities owed additional rent in the amount of $144,281 under the escalation clause and that, as the prevailing party, Owners was entitled to recover attorneys' fees, as provided in the lease. Commenting that defendant's expert was "not a terribly credible witness" and that "his expertise was suspect," the court dismissed the counterclaim for lost rents, reasoning that no rent had gone uncollected. Finally, the court decided that Equities was the owner of the a/c unit and therefore responsible for its maintenance and repair.

The lease between the parties provides that "fixtures" installed in the premises by or on behalf of the tenant become the property of the owner "upon installation," unless the owner affirmatively elects to have the tenant remove them. It is the owner's obligation to maintain and repair "heating and ventilation systems (to the extent such systems presently exist) serving the demised premises."

While it is unknown who originally installed the equipment supplying air conditioning to the medical offices, an engineer's report prepared in 1983 in anticipation of the cooperative conversion notes the presence of the a/c unit. Located in the south courtyard of the building, the unit is almost 6 feet square, 3 feet, 6 inches in height and connected to extensive ductwork leading to the medical offices on the first floor. The dedicated purpose of the unit, its size and the extent of its connection to the structure render it a fixture. Under the plain language of the lease, the unit became the property of Owners upon installation or, by operation of law, upon departure of the tenant who originally installed it, at the latest (*see Modica v Capece*, 189

AD2d 860, 861 [1993] [title to fixtures not removed upon surrender of possession passes to landlord]). Provisions in the sublease allocating responsibility for maintenance as between Equities and its subtenant are not probative of either the a/c unit's ownership or the parties' responsibilities under the overlease (*see Millicom Inc. v Breed, Abbott & Morgan*, 160 AD2d 496, 497 [1990], *lv denied* 76 NY2d 703 [1990] [sublease confers no greater rights on sublessee than those afforded to tenant by prime lease]; *Mann Theatres Corp. v Mid-Island Shopping Plaza Co.*, 94 AD2d 466, 471 [1983], *affd* 62 NY2d 930 [1984]).

As to the asserted loss of rent, we agree that defendant has failed to establish that any rent went unpaid as the result of Owners' failure to supply air conditioning during all times specified in the lease. The court's conclusion is amply supported by the evidence (*see Claridge Gardens v Menotti*, 160 AD2d 544, 544-545 [1990]), which establishes that Equities was merely negotiating with a prospective sublessee for a higher rent, but ultimately elected to renew the existing sublease and subsequently received all rents due thereunder.

Finally, the lease grants Owners the right to collect attorneys' fees in connection with any action involving the tenant's default of any term or covenant in the lease. It does not, however, bestow a commensurate right to attorneys' fees in connection with the defense of a claim, asserted by the tenant, that is unrelated to its default. Therefore, the matter must be remanded to Supreme Court for a determination of the appropriate fee attributable to Owners' prosecution of the action to effect a cure of the tenant's default in the payment of rent arrears. Concur—Tom, J.P., Andrias, Saxe, Williams and Sweeny, JJ.